## Frace, Appellant, *v.* Mutual Life Insurance Company of New York.

Argued December 11, 1942.

Before

BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*E. Arnold Forrest,* for appellant.

*Charles I. Thompson,* with him *John C. Phillips* and *Louis W. Dawson,* for appellee.

OPINION BY STADTFELD, J., February 1, 1943:

This is an appeal from the judgment of the court below entered in favor of Mutual Life Insurance Company of New York upon an action in assumpsit brought by Alma L. Hein Frace to recover total and permanent disability benefits under the provisions contained in a contract of life insurance issued by the company to the insured.

The relevant portion of the life insurance policy in respect to benefits in the event of total and permanent disability before the age of 60, sets forth the condition of payment as follows: "that he (insured) has become totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit and from following any gainful occupation. ......"

Since the evidence in the case has been omitted from the printed record on this appeal in pursuance of Rule 5 of this court, we rely, for a description of the facts of the case and the testimony in support thereof, upon the review contained in the opinion of the court below.

"The policy of life insurance was issued to plaintiff on April 21, 1924, when she was 21 years of age, in good health, single, and a school teacher by occupation. In 1928 she became engaged to marry, resigned her position as school teacher, and in 1929 was married to her present husband. Since that time her occupation has

been housewife, mother and helpmate to her husband. Prior to and following the birth of her only child, a son, she suffered pain and stiffness in her back and hips, scarlet fever, a bronchial condition and eczema of the hands, face, neck and feet. Upon due proof of such disability, the defendant insurance company on November 1, 1931, began paying her total and permanent disability benefits and paid the same continuously until February 1, 1939—a period of over seven years—when it refused to pay further benefits ..... The testimony discloses that plaintiff is 38 years of age, married, lives with her husband and their eleven-year-old son in a modest apartment located on the floor above and behind the neighborhood grocery store conducted by her husband in Easton, Pa. While she admitted that the effects of the scarlet fever and eczema had been completely cured by 1937, she complained of shortness of breath, rapid pulse, body temperature continually above normal, slight heart attacks, occasional blind spells, arthritis of the joints, inability to stoop, dizziness, coughing at times, a sinus condition and always feeling tired. There was considerable conflict of testimony in regard to the extent to which plaintiff's health incapacitated her. Her own physician testified that she could not follow her occupation consistently because she had too many bad days, but could perform routine and light household duties and her disorders do not continuously disable her. Other experts testified that plaintiff is only partially disabled and is able to look after her husband, child and small apartment, do a great deal of the house work, light cooking, wash dishes and assist her husband in his grocery store ..... Four witnesses observed plaintiff for prolonged periods of time, wearing a white apron and alone and unassisted waiting on numerous customers in the grocery store at various times. She was also seen delivering a bottle of milk to a neighbor, and shopping in the city of Easton on several occasions."

The jury rendered a verdict in favor of defendant company and plaintiff filed a motion for a new trial, alleging, inter alia, numerous errors committed by the trial judge in his charge and in affirming defendant's points for charge. Plaintiff's motion was overruled and refused.

All of the assignments of error relate to the trial judge's charge to the jury and to the affirmance of certain points for instruction submitted by counsel for defendant.

Charging the jury with respect to the law applicable to the case, the trial judge said: "The words 'totally and permanently disabled' as used in this policy do not mean that the insured must be absolutely helpless, mentally and physically and always to be confined to bed, because our Supreme Court has said, 'that these words "total and permanent disability" preventing performances of any work for compensation, gain or profit, and from following any gainful occupation, must receive a reasonable construction and if literally interpreted would require that an insured be a helpless invalid before she would be entitled to benefits under the policy. This cannot be what the parties intended. It is rare that any man is incapacitated from doing some work. Many a blind man weaves baskets, a man with both legs and one arm off can sit in a doorway and sell pencils, or act as a telegraph operator, but it cannot be well argued that either is not totally disabled.'

"Therefore, our Supreme Court says in these words, 'a reasonable interpretation of the words of the policy is that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing.'"

This does not mean, as I have said before, that the insured must be a helpless invalid in order to become entitled to total and permanent disability benefits. Nor

would she be barred from recovery because she may be able to perform a few trivial and desultory acts, or light work of a very limited character and at very irregular intervals, but it does mean that it is not enough for the insured to show that she is unable to do a substantial part of her ordinary house work. She must prove her inability to perform any of the duties of any occupation which she might be ordinarly capable of performing in order to recover in this case.

The first two paragraphs of this portion of the charge substantially adopted the wording of the applicable principle as set forth in *Cooper v. Metropolitan Life Ins. Co.*, 317 Pa. 405, 408, 177 A. 43, and later approved and followed in *Pearlman v. Metropolitan Life Ins. Co.*, 336 Pa. 444, 9 A. 2d 432; *Sebastianelli v. Prudential Ins. Co.*, 337 Pa. 466, 12 A. 2d 113; *Rudy v. New York Life Ins. Co.*, 139 Pa. Superior Ct. 517, 12 A. 2d 495; and *Wuerfel v. Metropolitan Life Ins. Co.*, 343 Pa. 291, 22 A. 747. Although there was no objection to this portion of the charge the principle therein laid down was repeated in defendant's second point for instruction, affirmed by the trial court and assigned as error. This assignment of error, No. 7, is overruled.

The third paragraph of the charge above quoted follows the language contained in *Pearlman v. Metropolitan Life Ins. Co.*, supra; *Silvano v. Metropolitan Life Ins. Co.*, 135 Pa. Superior Ct. 260, 5 A. 2d 423; *Rudy v. New York Life Ins. Co.*, supra; *Feigenbaum v. Prud. Ins. Co.*, 144 Pa. Superior Ct. 412, 19 A. 2d 542; *Milich v. Metropolitan Life Ins. Co.*, 145 Pa. Superior Ct. 430, 21 A. 2d 458; *Wuerfel v. Metropolitan Life Ins. Co.*, supra. There was no objection to this portion of the charge.

Following the above portion of the charge the trial court continued as follows: "The Jury should not interpret the phrase 'any work for compensation, gain or profit and from following any gainful occupation,' as her inability to go from her home and customary duties as housewife and mother and be unable to secure an

outside job for compensation and profit, but it does mean her inability to perform any of the duties of housewife, mother and helpmate to her husband, or any occupation which she might be ordinarily capable of performing. In other words, housewife and mother is a gainful occupation within the meaning of this policy and under the circumstances in this case.

"So, Members of the Jury, if you believe from the evidence that the Plaintiff has at any time since February, 1939, been able to perform any of the duties of a housewife, or any other occupation which she might ordinarily be capable of performing, she cannot recover because total disability has not been continuous or permanent.

"But if the Plaintiff and her witnesses have convinced you by the weight or fair preponderance of the evidence, that since February, 1939, she has been, now is, and will be totally and permanently disabled in performing any of the duties as housewife and mother, or of any occupation which she might ordinarily be capable of performing, and such disability is continuous and permanent, you can allow a recovery ......

"On the other hand, if the Plaintiff and her witnesses have failed to convince you by the weight or fair preponderance of the testimony so that you believe from the evidence that the Plaintiff has at anytime since February, 1939, been able to perform any of the duties of housewife or any other occupation which she might ordinarily be capable of performing, she cannot recover because total disability has not been continuous or permanent."

These excerpts from the charge together with several of defendant's points virtually repeating these statements affirmed by the trial court, constitute the remaining assignments of error. The charge of the court below, insofar as it instructed the jury to permit plaintiff to recover if she is *unable* "to perform any duties (either) of housewife, mother and helpmate to her husband, *or* any occupation which she might be ordinarily capable

of performing," was, if anything, favorable to plaintiff. It does not, in our opinion, constitute error, harmful or prejudicial to *plaintiff,* although it might properly have been objected to by *defendant* as in *Cooper v. Metropolitan Life Ins. Co.,* supra.

The accident policy under consideration in that case, made an express distinction between inability to engage in *any* employment and inability to engage *in the insured's* customary (i. e., "in which he is engaged at the time of the accident") employment. The Supreme Court there held that the trial court had overlooked this distinction in charging the jury that totally and wholly disabled, as used in the policies, meant not "absolute helplessness, but rather the inability of the insured to do the great portion or substantial part of *his* work or duty." The meaning of the policies thus enlarged by the charge to the prejudice of the *defendant insurance company* constituted reversible error, the court saying, p. 408, "The meaning of the policies is too plain and unmistakable to permit any enlargement of their terms by construction." But a similar charge, as in the instant case, can scarcely be held harmful or prejudicial to the plaintiff.

And conversely, the instruction to refuse recovery, if the insured is *able* "to perform any of the duties of a housewife or any other occupation which she might ordinarily be capable of performing," is, at least, not unfavorable to plaintiff. Where, as here, the jury heard the testimony as to which duties plaintiff could, or did, perform in her occupation as housewife in which she was engaged at the time of the disability complained of, and where, as here, they were instructed that she would not be barred from recovery "because she may be able to perform a few trivial and desultory acts, or light work of a very limited character and at very irregular intervals," the instruction complained of is not properly objectionable.

Finally, we do not regard the isolated statement of the trial court to the effect that "housewife and mother

is a gainful occupation within the meaning of this policy and under the circumstances of this case," when considered in the context of the entire charge, as being erroneous. On this point the case of *Metropolitan Life Ins. Co., v. McDevitt,* 55 Ga. App. 342, 190 S.E. 404, strikingly similar in its facts to the instant case, has been called to our attention.

In that case the question before the Georgia court was the construction of a disability clause in a life insurance policy providing benefits if the insured as a result of disease "has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit." The plaintiff was a stenographer at the time the policy was issued. She was married in 1924 and gave up her position in 1925, after which she had no occupation other than that of housewife and helpmate to her husband. Her first child was born in October of 1925 and thereafter she added to her housewifely duties that of mother. She claimed total and permanent disability beginning in 1934 and argued that loss of hearing prevented her from engaging in a business or occupation for compensation or profit. The insurance company contended that being a housewife and helpmate to a husband and mother of children constituted a gainful occupation within the meaning of the policy, and that she was still able to perform most of her duties of such occupation.

The trial judge, without the intervention of a jury, found for the plaintiff, but the judgment was reversed on appeal with this comment: "She has been dependent on her position as wife, mother, and housewife, and there is no evidence that she is totally and permanently disabled from performing such duties or that she has not continued to perform such obligations. We are unwilling to hold that she of whom Solomon spoke when he said, 'She looketh well to the ways of her household, and eateth not the bread of idleness,' is not pursuing, or capacitated to pursue, a gainful occupa-

tion such as she might be expected to follow. The evidence does not disclose that she was prevented, 'from pursuing the usual and customary duties of' the 'employment on which' she 'depends for a living.' *N. Y. Life Ins. Co. v. Thompson,* supra, (50 Ga. App. 413, 178 S.E. 389) The fact that the insured had an occupation at the time the policy was issued, and that fifteen years later she was incapacitated from performing the duties of such occupation, does not of itself show that she is so totally and permanently disabled as to be unable at any time to perform any work or to engage in any business for compensation or profit, when it is also made to appear that she had not engaged in such former occupation within ten years, and that she was and had been a housewife and mother and not incapacitated from performing the duties pertaining to such occupation."

We have carefully read the charge of the court and the points for instruction. We have likewise examined each of the assignments of error. None sets forth any reversible error. The issues were properly submitted to the jury under a fair and comprehensive charge, and the verdict has the support of the evidence.

The assignments of error are overruled and judgment affirmed.